ROBERT J. HOLLOWAY, *alias* EDWARD JOE MOORE, *alias* DUPRIEST V. THE STATE.

No. 22951. Delivered November 15, 1944.
Rehearing Denied January 10, 1945.

34

The opinion states the case.

*W. S. Foster* and *John N. Gauntt,* both of Waco, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is death.

The record reflects that on the night of the 1st day of January, 1944, appellant, in company with Leon Russell and Daylight Jacobs, went in an automobile from Waco to McGregor for the purpose of making some money. Upon their arrival at McGregor, they first visited a pool hall. From there appellant and Russell went to a dance hall, from which place they drove by a cafe owned and operated by W. H. Braswell, who was in the act of closing up for the night. When Braswell and his wife came out of the cafe and entered their automobile, appellant and Russell noticed that the man was carrying a small suitcase; that when Braswell and his wife drove away, appellant and Russell followed them; that when Braswell turned into the driveway at his home, appellant and Russell drove beyond the house a short distance, stopped, left the key to the switch in the car and walked back to the home of Braswell in which the lights had been turned on. They walked upon the front porch and knocked. Braswell, who heard them, went to the door, opened it and inquired of them what they wanted, whereupon appellant shot him. Thereafter several shots were fired immediately, some by Braswell (the deceased) and some by appellant. In his hasty retreat from the premises of the deceased, the appellant lost his pistol and his hat. These articles were subsequently

found and identified as belonging to appellant. At the time of the shooting, Joanna Gray was standing at the end of a lane not quite a block from the home of the deceased. She saw appellant running from the home of the deceased. She also saw him enter the parked car and endeavor to drive away but it appeared to be bogged down in the mud. Soon after the shooting appellant was arrested, at which time he had in his possession the key to the car in which he sought to escape. On the following morning appellant made a confession, and on his trial, he entered a plea of guilty to the charge of murder with malice. He did not testify in his own behalf, nor did .he question the correctness of his voluntary written confession. The court, after the State had proven the facts as herein related, instructed the jury on the law applicable to the case and no objections were urged thereto by appellant.

Appellant, by proper bills of exception, brings forward two complaints. By Bill No. 1 he complains of the action of the trial court in permitting the State to introduce in evidence only a part of his confession and in declining to require it to introduce it in its entirety, whereupon appellant introduced the balance thereof. We see no error reflected by the bill. The State had a right to introduce all or a part of the confession as it deemed proper, and appellant had the legal right to introduce the remainder thereof. In support of the opinion here expressed, we refer to the case of Keith v. State, 103 Tex. Cr. R. 636.

By Bill No. 2 he complains of certain remarks alleged to have been made by the Assistant District Attorney in his argument to the jury. This bill is qualified by the court, who states in his qualification thereof that he did not remember any such remark being made; that no objection was made by appellant to any argument. Appellant accepted the bill as thus qualified and is bound thereby. The bill, as qualified, fails to reflect any error.

Appellant, for the first time in this court, by ex parte verbal statements and arguments, seeks to impeach the judgment of the trial court on the ground that the court did not hear any evidence as to his sanity before receiving his plea of guilty. The record affirmatively reflects that the trial court, before receiving the plea of guilty, admonished appellant of the consequences of said plea, but appellant persisted on pleading guilty notwithstanding such admonition. The judgment further recites, "and it plainy appearing to the court that the defendant is sane and uninfluenced in making said plea by any consideration of fear or any persuasive or delusive hope of pardon, prompting him

to confess his guilt" etc. It will be noted from the foregoing recitals of the judgment that it plainly appeared to the court at the time of receiving the plea of guilty that appellant was sane. This judgment being in due and legal form cannot be impeached by matters dehors the record. See Zepeda v. State, 110 Tex. Cr. R. 57. If the record does not speak the truth the matter should have been raised in the court below as was done in the case of Harris v. State, 17 Tex. Cr. App. 559. See also Scott v. State, 29 Tex. Cr. App. 217.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

By the motion for rehearing it is insisted that before the trial court can receive a plea of guilty he must hear evidence as to the sanity of the person charged with the commission of a felony. In support of this, reliance is had on the facts in the record, not the law announced, of Murray v. State 182 S. W. (2d) 475. Apparently it is the position of appellant that this court should take judicial knowledge of the fact that some people may be insane when they in fact appear to be sane. This may be true, as a scientific fact, but there is no burden on the trial judge to hear evidence as to the sanity of a party who pleads in a felony case before receiving such plea, and the case of Murray v. State, supra, does not so hold or intimate. The discussion of the facts in the Murray case is not even helpful to appellant for Murray appeared to be of sound mind and the evidence showed him to be, even though he had once been in an insane asylum and had escaped. It may be definitely stated that where a party appearing for trial in a felony case plainly appears to the court to be of sound mind the court need not hear proof of his mental capacity, unless and until the issue has been raised by evidence, or reliable information has come to the court. In the latter case the ends of justice might require that the trial court look further into the matter. The record in the case now before us does not contain any evidence, one way or the other, relating to appellant's mental condition at the time the plea was entered other than the statement in the judgment.

We have again reviewed the record and the original opinion in this case and hold that the correct decision was reached by this court.